UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SARAH KOSEK,                          :
                                      :CIVIL ACTION NO. 3:11-CV-1558
            Plaintiff,                :
                                      :(JUDGE CONABOY)
            v.                        :
                                      :
LUZERNE COUNTY and                    :
JOSEPH PIAZZA,                        :
                                      :
            Defendants.               :
                                      :

_____

## MEMORANDUM

Here we consider Defendants' Motion for Summary Judgment (Doc. 25) filed on October 1, 2012. Defendants filed Defendants' Brief in Support of Their Motion for Summary Judgment (Doc. 26) and Defendants' Statement of Undisputed Material Facts as to Which No Genuine Issue Remains to Be Tried (Doc. 27) on October 11, 2012. With the motion, Defendants seek summary judgment in their favor on all claims contained in Plaintiff's Amended Complaint (Doc. 4).

Plaintiff filed Plaintiff's Brief in Opposition to Defendants' Brief in Support of Their Motion for Summary Judgment (Doc. 29) and Plaintiff's Response to Statement of Facts and Counterstatement (Doc. 30) on November 5, 2012. On November 21, 2012, Defendants filed Defendants' Reply Brief in Support of Their Motion for Summary Judgment (Doc. 31) and Defendants' Response to Plaintiff's Counterstatement of Material Facts (Doc. 32). With these filings, this motion is now fully briefed and ripe for disposition. For the reasons discussed below, Defendants' motion is denied.

# I. Background

Plaintiff Sarah Kosek ("Plaintiff") became employed at the Luzerne County Correctional Facility ("LCCF") as a correctional officer on March 21, 2005. (Doc. 27 ¶ 1; Doc. 30 ¶ 1.) A vacant correctional counselor position was posted at the LCCF on July 20, 2009. (Doc. 27 ¶ 2; Doc. 30 ¶ 2.) Plaintiff applied for the position on July 22, 2009. (Doc. 27 ¶ 3; Doc. 30 ¶ 3.)

Approximately six (6) people applied for the position and were interviewed. (Doc. 27 ¶ 4; Doc. 30 ¶ 4.) The interviewees included Robert Hetro ("Mr. Hetro") who was first employed at the LCCF in February of 2008 as a corrections officer II. (Doc. 27 ¶¶ 16, 17; Doc. 30 ¶¶ 16, 17.)

The LCCF Warden Joseph Piazza ("Defendant Piazza") asked Jennifer Lombardo ("Ms. Lombardo"), the Director of the LCCF's Day Reporting Center whose duties included supervision of the correctional counselors, to assist him with the interviews for the correctional counselor position. (Doc. 27 ¶¶ 5-6; Doc. 30 ¶¶ 5-6.) During the interview, Defendant Piazza had the applicants' personnel files and transcripts for review. (Doc. 27 ¶ 8; Doc. 30 ¶ 8.) At the completion of the interview process, Ms. Lombardo and Defendant Piazza narrowed the field of applicants to Plaintiff and Mr. Hetro. (Doc. 27 ¶ 22; Doc. 30 ¶ 22.) Defendant Piazza made the ultimate decision as to who would be promoted to the counselor position. (Doc. 27 ¶ 25; Doc. 30 ¶ 25.)

Mr. Hetro was hired for the correctional counselor position effective August 28, 2009. (Doc. 27 ¶ 27; Doc. 30 ¶ 27.) Plaintiff filed a union grievance against the County based on her overall seniority. (Doc. 27 ¶ 28; Doc. 30 ¶ 28.) Article VIII, Section 5 of the applicable collective bargaining agreement provides that in the selection process for a vacancy, seniority should prevail where "qualification, experience, physical fitness, ability, and efficiency of the Employee to perform the job are relatively equal." (Doc. 30 ¶ 36; Doc. 32 ¶ 36.)

Eventually the matter was settled and Plaintiff was put into the correctional counselor position. The parties dispute the date of the settlement and the cause of the resolution of the grievance and award of the position. Defendants aver the grievance settled on May 25, 2011. (Doc. 27 ¶ 28.) In support of this assertion, Defendants' citations include a letter from Defendant Piazza to union representative Anthony Seiwell dated May 25, 2011, informing him the grievance was settled by mutual agreement "between the parties, union and management." (Doc. 28-13 at 2.) Plaintiff disputes this settlement date, asserting the Luzerne County Prison Board tabled consideration of settlement of Plaintiff's grievance on May 24, 2011, and June 13, 2011, and finally approved the settlement of the grievance on September 12, 2011--after she filed her federal complaint on August 22, 2011, and the lawsuit was reported in the Wilkes-Barre *Times Leader* on August 23, 2011. (Doc.

30 ¶¶ 28, 31, 32.)  Defendants agree the Luzerne County Prison Board tabled consideration of settlement of Plaintiff's grievance on May 24, 2011, and June 13, 2011.  (Doc. 32 ¶¶ 31, 32.)

Plaintiff was awarded a correctional counselor position with back pay effective August 28, 2009.[1]  (Doc. 27 ¶ 28.)  Plaintiff became a correctional counselor on September 23, 2011.[2]  (Doc. 27 ¶ 29; Doc. 30 ¶ 29.)

The award of the correctional counselor position to Mr. Hetro is at the heart of this litigation.  Therefore, Plaintiff's and Mr. Hetro's qualifications for the position are relevant.

Plaintiff graduated from King's College with a bachelor's degree in criminal justice, *magna cum laude*.  (Doc. 30 ¶ 44; Doc. 32 ¶ 44.)  She has an Associates Degree in criminal justice counseling (Doc. 30 ¶ 48), Act 120 Police Academy certification issued from Lackawanna College and was a member of Alpha Phi Sigma, the National Criminal Justice Honor Society (Doc. 30 ¶¶ 49-50; Doc.

---

[1]  When Plaintiff was placed in the contested position in September 2011, Mr. Hetro was placed into another correctional counselor position which had been vacated by the termination of another employee (Mr. Wydo).  (Doc. 30 ¶ 51; Doc. 32 ¶ 51.)  In April 2011, Defendants allowed Mr. Hetro to successfully grieve the original appointment of Mr. Wydo, years before, on the basis of Mr. Wydo's lack of initial qualifications, even though Mr. Hetro did not grieve it at the time.  (Doc. 30 ¶ 52.)  Defendants state that Mr. Hetro filed the grievance when he learned that Mr. Wydo did not have the requisite qualifications.  (Doc. 32 ¶ 52.)

[2]  Plaintiff was laid off from the Correctional Counselor position on March 1, 2012, and is now a correctional officer. (Doc. 27 ¶ 30; Doc. 30 ¶ 30.)  This lay off is not disputed.

4

32 ¶¶ 49-50).

Mr. Hetro graduated from King's College with a bachelor of arts in criminal justice and a class rank of 232 out of 245. (Doc. 27 ¶ 18; Doc. 30 ¶¶ 18, 45; Doc. 32 ¶ 45.) He had a minor in psychology and Act 120 certification from the police academy. (Doc. 27 ¶ 18; Doc. 30 ¶ 18.) Mr. Hetro also served as a uniformed patrolman, was a junior counselor at Pennsylvania State Police Camp Cadet, and was a member of the North American SWAT Training Association. (Doc. 27 ¶ 19; Doc. 30 ¶ 19.)

When Plaintiff worked as a corrections officer at the LCCF in the main prison, she worked with both male and female inmates. (Doc. 30 ¶ 40.) Because only males were housed in the Minimal Offenders Building where Mr. Hetro worked as a Correstions Officer II, he worked only with males. (Doc. 30 ¶ 43; Doc. 32 ¶ 43.)

The parties dispute Plaintiff's prior experience and the nature of the posted job duties. (Doc. 27 ¶ 10; Doc. 30 ¶ 10.) Defendants assert that, "before applying for the counselor position, Plaintiff had no experience with any of the posted job duties except counseling inmates on issues related to institutional, vocational and/or community adjustment and/or problems and working effectively with law enforcement and community treatment providers and legal support." (Doc. 27 ¶ 10.) Plaintiff maintains that she "also had a working knowledge of all existing post orders, policies, procedures and directives, . . . had

5

knowledge of basic computer programs . . .[,] performed security duties as directed by the Warden[,] . . . and complied with directives given by the Warden or Deputy Warden . . . . (Doc. 30 ¶ 10.) Plaintiff adds that the posted job duties were not qualifications for the position and could not have been performed in their entirety except by a person in that position. (Doc. 30 ¶ 10.)

At their depositions, Defendant Piazza and Ms. Lombardo provided explanations for the decision to hire Mr. Hetro in August 2009--the decision which Plaintiff asserts violated Title VII's prohibition against discrimination on the basis of gender.

Defendant Piazza reported that Mr. Hetro's qualifications and experience were greater than Plaintiff's--testimony Plaintiff calls self-serving, subjective conclusions and not statements of fact. (Doc. 27 ¶ 24; Doc. 30 ¶ 24.) Defendant Piazza reported that he believed Mr. Hetro was a better job candidate because of the following: his experience as a practical police officer gave him practical experience with the criminal justice system; he had a bachelor of arts degree in criminal justice, a minor in psychology, and Act 120 certification; he presented as more self-confident; and he had better communication skills. (Doc. 27 ¶ 26.) Plaintiff also calls this testimony self-serving and not a statement of fact. (Doc. 30 ¶ 26.) Plaintiff adds that Defendant Piazza referenced Mr. Hetro's high school extra-curricular activities (Boy Scouts,

Explorers) and his attendance at a summer camp sponsored by the Pennsylvania State Police among reasons why he believed Mr. Hetro's experience was better than Plaintiff's. (Doc. 30 ¶ 47.)

Defendant Piazza did not consider Mr. Hetro's class rank and considered that Mr. Hetro's academic experience was better than Plaintiff's because he had more psychology courses.[3] (Doc. 30 ¶ 46.) Defendant Piazza did not consider it important that Plaintiff had received an Associates Degree in criminal justice counseling.[4] (Doc. 30 ¶ 48.)

Ms. Lombardo reported that she recommended Mr. Hetro for the correctional counselor position because of his knowledge of mental health issues, his active use of his criminal justice degree, and previous employment as a local police officer--observations Plaintiff calls self-serving, subjective conclusions and not statements of fact. (Doc. 27 ¶ 23; Doc. 30 ¶ 23.) Ms. Lombardo found Mr. Hetro to be more confident at his interview (Doc. 27 ¶

---

[3]  Though Defendants deny this averment as stated (Doc. 32 ¶ 46), Plaintiff's citation to Defendant Piazza's testimony supports the assertion. (*See* Doc. 28-4 at 48-49 (Piazza Dep. 48:18-49:12).)

[4]  Though Defendants deny this averment as stated (Doc. 32 ¶ 48), Plaintiff's citation to Defendant Piazza's testimony supports the assertion--Defendant Piazza responded affirmatively that he "made note that Ms. Kosek had an associate degree in criminal justice," but when asked what consideration he gave the degree, he stated that "some colleges just use a different term for the same degree" and concluded that Plaintiff's degree and Mr. Hetro's degrees "except for him having more psychology are pretty much equal." (*See* Doc. 28-4 at 49-50 (Piazza Dep. 49:14-50:11).)

21), another assertion Plaintiff disputes and labels self-serving (Doc. 30 ¶ 21).

At her deposition, Ms. Lombardo stated she found that Mr. Hetro and Plaintiff were relatively equal in their qualifications. (Doc. 30 ¶ 37.)  Plaintiff stated Luzerne County had never employed a female corrections counselor at the LCCF at the time of the selection in question.  (Doc. 30 ¶ 39.)  Ms. Lombardo stated she did not know of any.  (Doc. 28-2 at 20 (Lombardo Dep. 19:1-12).)

As noted above, Plaintiff filed the instant action on August 22, 2011.  (Doc. 1.)  She filed the Amended Complaint on September 26, 2012.  (Doc. 4.)  The Amended Complaint contains three counts: Count I, a sex discrimination claim pursuant to 42 U.S.C. § 2000e-2(a) against Defendant Luzerne County; Count II, an equal protection claim based on sex discrimination filed pursuant to 42 U.S.C. § 1983 against Defendants Luzerne County and Joseph Piazza; and Count III, a sex discrimination claim filed pursuant to the Pennsylvania Human Relations Act, 43 Pa. C.S. § 955(a), against Defendant Luzerne County.  (Doc. 4.)

Defendants filed the motion under consideration on October 1, 2012, seeking summary judgment on all claims contained in the Amended Complaint.  (Docs. 25, 26.)  Plaintiff asserts that all claims should go forward.  (Doc. 29.)

## II. Discussion

### A.   *Summary Judgment Standard*

Summary judgment is appropriate when the movant demonstrates

there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by

Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the plaintiff. *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 267 (3d Cir. 2001) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 854 N.1 (3d Cir. 1990). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## B.   *Defendants' Motion*

Defendants' assert that Plaintiff's sex discrimination claims brought under Title VII, the Pennsylvania Human Relations Act ("PHRA"), and the Equal Protection Clause fail as a matter of law. (Doc. 26 at 6.)  For the reasons discussed below we disagree.

## 1.   <u>Sex Discrimination under Title VII and the Pennsylvania Human Relations Act</u>

Defendants argue that Plaintiff's sex discrimination claims under Title VII (Count I) and the PHRA (Count III) must be dismissed because Plaintiff has not shown that she was subject to

an adverse employment action or shown that the reasons for her termination offered by Defendants were a pretext for gender discrimination. (Doc. 26 at 6-9.)

Gender discrimination claims under Title VII and the PHRA are analyzed using the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*, *e.g.*, *Atkinson v. LaFayette College*, 460 F.3d 447, 453-54 (3d Cir. 2006). First, the plaintiff must establish a prima facie case of sex discrimination. *Id.* at 454. If she succeeds, the burden shifts to the defendant to advance a legitimate, non-discriminatory reason for its action. *Id.* If the defendant advances such a position, the burden shifts back to the plaintiff to prove that the nondiscriminatory explanation is merely pretext for discrimination. *Id.*

**a. Prima Facie Case**

Defendant first argues Plaintiff cannot satisfy the elements of her prima facie case. We disagree

For a claim of gender discrimination, a plaintiff must establish a prima facie case by demonstrating "(1) he is a member of a protected class, (2) he is qualified for the job, (3) defendant took an adverse employment action, and (4) the circumstances surrounding the adverse action support an inference of discrimination based on the plaintiff's protected class." *Moore v. Shinseki*, No. 11-4234, 2012 WL 2550479, at *1 (3d Cir. July 3,

11

2012) (not precedential) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)).

Defendants maintain Plaintiff cannot meet the prima facie requirements because she did not suffer an adverse employment action in that she was given the correctional counselor position with back pay and departmental seniority with the settlement of her union grievance. (Doc. 26 at 8-9 (citing *Lewis v. Bell Atlantic/Verizon*, 321 F. App'x 217 (3d Cir. 2009) (not precedential); *Sarko v. Henderson*, No. 2:03-CV-03473, 2004 WL 2440202 (E.D. Pa. Oct. 29, 2004)).)

Plaintiff maintains Defendants' reliance on these cases is misplaced because, in both *Lewis* and *Sarko*, the adverse action had been reversed before the lawsuit was filed and here Plaintiff was awarded the correctional counselor position and back pay after she filed suit. (Doc. 29 at 12.) Plaintiff also asserts that she received only a partial remedy with the position appointment and backpay, adding it would be "grossly unfair to an employee who underwent years of unlawful deprivation and was compelled to retain counsel and file suit to vindicate her rights." (Doc. 29 at 12.)

In their reply brief, Defendants refute Plaintiff's reliance on the importance of the status of the allegedly adverse action at the time of filing. (Doc. 31 at 2-3.) Defendants assert that in the decisions cited, the timing of the plaintiffs' commencement of litigation was not relevant. (Doc. 31 at 3.) Defendants also

maintain that Plaintiff has not provided any authority to support the distinction between a pre and post filing remedy. (Doc. 31 at 2-3.)

We agree that the distinction between those cases where the courts determined the plaintiff had been made whole pre filing and therefore had not suffered an adverse employment action and the post-filing remedy which occurred here is dispositive. In *Sarko*, the court noted that "*[a]s of the filing of this action, Plaintiff's removal had been reversed as a result of the grievance process and he has been reinstated by an arbitration award of back pay and benefits.*" 2004 WL 2440202, at *2 (emphasis added). At the time Plaintiff filed this action, she had not been assigned to the correctional counselor position at issue, and had not been awarded back bay and seniority. Therefore, at the time of filing, Plaintiff had suffered an adverse employment action for which no relief had been granted. After filing this action, Plaintiff may have received *some* of the relief she is potentially entitled to under Title VII. However, 42 U.S.C. § 2000e-5(g)(1) allows for injunctive and equitable relief beyond reinstatement or hiring and the award of back pay. *See*, *e.g.*, *Robinson v. Southeastern Pennsylvania Transp. Authority*, 982 F.2d 892, 899 n.7 (3d Cir. 1993) ("Title VII was amended in November of 1991 to authorize the recover of compensatory and punitive damages.") Importantly, Defendants, who bear the initial burden of showing that Plaintiff

cannot prove the elements of her prima facie case, *Celotex*, 477 U.S. at 330, have not presented any authority which supports the proposition that a post-filing change of status which serves to satisfy some damages sought by the plaintiff moots the relevant claim where other damages allowed by statute remain available to the plaintiff. Therefore, Defendants have not met their burden of showing they are entitled to judgment on Plaintiff's Title VII and PHRA claims based on their argument that Plaintiff cannot satisfy the elements of her prima facie case.

**b.    Pretext for Discrimination**

Assuming *arguendo* that Plaintiff has suffered an adverse employment action, Defendants also posit that Plaintiff has failed to show the legitimate reasons offered by Defendants were a pretext for gender discrimination. (Doc. 26 at 10.) We disagree.

As set out above, at the third stage of the *McDonnell Douglas* framework, the plaintiff has the burden of showing that the defendant's proffered reason for its adverse action was a pretext for discrimination. 460 F.3d at 454.

> To survive a motion for summary judgment, a plaintiff may prevail either by discrediting the employer's proffered reasons or by showing that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *See Fuentes v. Perskie*, 32 F.3d 759, 743 (3d Cir. 1994). "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken. . . . Rather, the non-moving plaintiff must demonstrate such

14

> weaknesses, implausibilities,
> inconsistencies, incoherencies, or
> contradictions in the employer's proffered
> legitimate reasons for its actions that a
> reasonable factfinder could rationally find
> them." *Id.* at 765. A plaintiff may support
> an assertion that an invidious discriminatory
> reason was more likely than not a motivating
> cause by showing that "the employer has
> treated more favorably similarly situated
> persons not within the protected class."
> *Jones v. School Dist. of Philadelphia*, 198
> F.3d 403, 413 (3d Cir. 1999).

*Amfosakyi v. Frito Lay, Inc.*, , 2012 WL 3985308, at *5 (3d Cir. Sept. 12, 2012) (not precedential).

Defendants maintain Plaintiff cannot show by a preponderance of the evidence that the legitimate reasons offered by Defendant Piazza for hiring Mr. Hetro rather than Plaintiff were a pretext for discrimination and not his true reasons. (Doc. 26 at 11.) Specifically, Defendants cite the following reasons proffered by Defendant Piazza for his conclusion that Mr. Hetro was the superior candidate:

> (1) his experience as a police officer gave
> him practical experience with the criminal
> justice system, *i.e.*, dealing with the
> public, participating in trials and
> understanding sentencing, which gave him a
> deeper insight into "what inmates go through"
> outside the walls of the LCCF; (2) he had a
> bachelor of arts in criminal justice, a minor
> in psychology and Act 120 certification for
> the police academy; (3) he presented as more
> self-confident; and (4) had better
> communication skills.

(Doc. 26 at 11 (citing Doc. 27 ¶¶ 24, 26).) Defendants also point to Ms. Lombardo's testimony that she believed Mr. Hetro to be the

15

superior candidate for the following reasons:

> (1) he was familiar with the Mental Health
> Act and had training with respect to the 302
> involuntary commitment process; (2) he was
> actively using his criminal justice
> background through his service as a local
> police officer; and (3) she perceived Mr.
> Hetro as being more confident and performing
> better in his interview.

(Doc. 26 at 11 (citing Doc. 27 ¶¶ 19-20).)  Asserting that because "Mr. Hetro's educational qualifications, experience and interview support the decision to hire him" (Doc. 26 at 13), Defendants contend that "a reasonable fact finder, can, based upon the summary judgment record, conclude that the proffered non-discriminatory reasons for Mr. Hetro being hired over Plaintiff are 'worthy of credence' and are not an after-the-fact-created-sham; accordingly, Plaintiff's Title VII, PHRA and equal protection claims must be dismissed."  (Doc. 26 at 13-14.)

Plaintiff frames the pertinent question as whether she has "put forth evidence which establishes the existence of a genuine issue of material fact as to whether the reasons stated post hoc by the Defendants for her non-selection were pretextual pursuant to *Fuentes*."  (Doc. 29 at 13.)  Plaintiff concludes that she has done so.  (Doc. 29 at 19.)  Specifically, Plaintiff points to the following in support of her argument: 1) Defendants' brief does not address the fact that the collective bargaining agreement requires the selection of the more senior candidate where their qualifications "are relatively equal" (Doc. 29 at 13 (citing Doc.

16

30 ¶ 36)); 2) Ms. Lombardo testified that Plaintiff and Mr. Hetro were relatively equal in their qualifications (Doc. 29 at 14 (citing Doc. 30 ¶ 37)); 3) Defendant Piazza agreed that Plaintiff and Mr. Hetro were relatively equal in terms of qualifications and physical fitness (Doc. 29 at 14 (citing Doc. 30 ¶ 36); 4) Defendant Piazza combined the other three relevant categories--experience, ability, and efficiency--into a single category and concluded Mr. Hetro was superior, but the reasons provided for this conclusion could be considered by a jury to be weak, implausible or incoherent; 5) Defendant Piazza gave greater weight to Mr. Hetro's experience and qualifications than to Plaintiff's (Doc. 29 at 15-17 (citations omitted)); 6) Defendant Piazza had difficulty articulating the relevance of some of Mr. Hetro's "superior" experience and qualifications (Doc. 29 at 15-17); 7) Ms. Lombardo's "supposed recommendation" of Mr. Hetro is suspect (Doc. 29 at 17-18 (citations omitted)); and 8) "a conclusion that Mr. Hetro's and Ms. Kosek's qualifications were not relatively equal because Mr. Hetro's were so much superior is simply incredible" (Doc. 29 at 18).

Defendants reply that "Plaintiff misapprehends *Fuentes*" (Doc. 31 at 7): rather than standing for the proposition that "'a jury is entitled to consider whether Warden Piazza's reasons are weak, implausible or incoherent'" (*id.* (citing Doc. 29 at 13)), the plaintiff must show the proffered legitimate reason is pretext

which "is a question for the jury only if Plaintiff can demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Warden Piazza's proffered legitimate reasons such that a reasonable fact finder would find them 'unworthy of credence'" (*id.* (quoting *Fuentes*, 32 F.3d at 764-65)).

While we agree with Defendants that it is Plaintiff's burden to produce evidence sufficient to show that the case should go to a jury, we also agree with Plaintiff that issues of credibility exist in this case which preclude summary judgment in favor of Defendants on Plaintiff's Title VII and PHRA claims.  A jury *could* believe Warden Piazza believed Mr. Hetro's educational qualifications, experience and interview supported the decision to hire him and formed the basis of his decision (*see* Doc. 31 at 8), even if they considered Defendant Piazza's assessments wrong or mistaken. However, Plaintiff has presented evidence which demonstrates weaknesses in the proffered legitimate reasons--evidence sufficient to allow a jury to find the proffered reasons unworthy of credence. Defendants discuss the collective bargaining agreement requirements in their reply brief and assert "the qualifications, experience, ability and efficiency of Plaintiff and Mr. Hetro to perform the counselor position were not relatively equal."  (Doc. 31 at 4 (citing Doc. 27 ¶¶ 24,26).)  However, the evidence cited by Plaintiff shows that, in Defendant Piazza's retelling, Plaintiff's qualifications and experience were not equally weighed and/or

18

valued for reasons which Defendant Piazza at times found difficult to articulate. (*See* Doc. 28-4 at 45-55.) Similarly, Defendant Piazza may have significantly inflated some of Mr. Hetro's experiences, experiences which he cited as part of the rationale for his decision. For example, the plausibility of a week at Camp Cadet and involvement with MADD providing bases for Defendant Piazza's decision could contribute to a jury finding the proffered reasons unworthy of credence and, therefore, call into question the decision maker's general credibility. (Doc. 28-4 at 46-47, 52-53.) Finally, Plaintiff has proffered evidence from which a reasonable fact finder could reject Defendants' reliance on Ms. Lombardo's testimony regarding her recommendation of Mr. Hetro. (Doc. 29 at 17-18.)

In summary, while we agree with Defendants that a reasonable fact finder "can" arrive at the conclusion that its proffered reasons are worthy of credence (Doc. 26 at 13-14), we conclude that Plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence' and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes*, 32 F.3d at 764 (internal quotations and citations omitted). Because this is a case where credibility determinations and the weighing of evidence are

necessary, summary judgment is not appropriate on Plaintiff's Title VII and PHRA claims.

## 2.   **Equal Protection**

Asserting that Plaintiff's equal protection claim is analyzed using the same framework as her Title VII and PHRA claims (Doc. 26 at 6), Defendants maintain that Plaintiff's municipal liability claim fails because Plaintiff's Fourteenth Amendment equal protection rights were not violated (*id.* at 14).

Plaintiff agrees that the Title VII analysis applies to Plaintiff's equal protection claim.  (Doc. 29 at 19.)  She asserts this claim should be decided by a jury for the same reason as her Title VII and PHRA claims should go forward.

Because we have concluded that Plaintiff's Title VII and PHRA claims go forward and because Defendants provide no additional basis for the dismissal of Plaintiff's equal protection claim, this claim also goes forward.

### III. Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment (Doc. 25) is denied.  An appropriate Order follows.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge
DATED: November 30, 2012

